**Dated: May 6, 2026**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ANIQUASEA MARIE HARDING, | ) | Case No. 25-13261-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| IAN'S ENTERPRISE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 26-1002-SAH |
| | ) | |
| ANIQUASEA MARIE HARDING, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT, BRIEF IN SUPPORT, REQUEST FOR ATTORNEY COMPENSATION, AND NOTICE OF OPPORTUNITY FOR HEARING [DOC. 6]

The following are before the Court for consideration:

1. The Complaint [Doc. 1] (the "Complaint"), filed on January 20, 2026, by plaintiff Ian's Enterprise, LLC ("Plaintiff");

2. Defendant's Motion to Dismiss Adversary Complaint, Brief in Support, Request for Attorney Compensation, and Notice of Opportunity for Hearing [Doc. 6], filed on March 5, 2026, by defendant Aniquasea Marie Harding ("Defendant");

3.      Plaintiff's Response to Defendant's Motion to Dismiss Adversary Complaint [Doc. 13] (the "Response"), filed on March 23, 2026, by Plaintiff.

## BACKGROUND

In 2017, Defendant entered into a lease agreement with a certain landlord; Defendant ultimately defaulted on the lease. After the default, Defendant signed a promissory note for the amount of damage resulting from her breach of the lease agreement. The promissory note was later assigned to Plaintiff. Defendant did not make any payments on the promissory note and then filed bankruptcy. Plaintiff now seeks to have the debt arising from the promissory note deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[1]

## JURISDICTION

The Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I).

## MOTION TO DISMISS STANDARD

A plaintiff bears the burden to frame a complaint with enough facts to suggest he or she is entitled to relief. Robbins v. Oklahoma ex rel. Okla. Dep't of Human Servs., 519 F.3d 1242, 1247 (10th Cir. 2008). To survive a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure (made applicable by Rule 7012), the complaint must include enough facts to state a facially plausible claim. Barenburg v. Burton (In re Burton), 2010 WL 3422584, at *2 (10th Cir. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is

---

[1] Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that Defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

This standard requires that factual allegations contained in an adversary complaint be sufficient to raise a right to relief above mere speculation. Twombly, 550 U.S. at 555; see also, Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (stating complaint must give the court reason to believe the plaintiff has a reasonable likelihood of mustering factual support for the claims raised). Thus, generalized allegations encompassing a potentially large swath of conduct, much of which is innocent, do not cause conceivable claims to be plausible claims. Robbins, 519 F.3d at 1247 (internal quotations omitted). Requiring a claim to be, at a minimum, plausible "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform Defendants of the actual grounds of the claim against them." Robbins, 519 F.3d at 1248. The degree of specificity of a party's allegations necessary to make a claim plausible and provide fair notice to the opposing party depends upon the context of the claim and the nature of the case. Robbins, 519 F.3d at 1248.

Additionally, complaints asserting claims based on fraud must meet a heightened pleading standard under Rule 9(b), Fed. R. Civ. P. (made applicable by Fed. R. Bankr. P. 7009). Rule 9(b) requires the circumstances of the alleged fraud or mistake to be stated with particularity in the complaint. In other words, Rule 9(b) requires Plaintiff to plead the "who, what, when and where" of the alleged fraud. Parkway Bank & Trust v. Casali (In re Casali), 517 B.R. 835, 842 (Bankr. N.D. Ill. 2014) (citing DiLeo v. Ernst & Young, 901 F.2d 624, 627

(7th Cir. 1990)); <u>Danbom v. Prewitt</u> (<u>In re Prewitt</u>), 486 B.R. 518, 523 (Bankr. D. N.M. 2013)

(citing <u>Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d 1246, 1252 (10th Cir. 1997)).

<u>**STATEMENT OF FACTS**</u>

The Court must accept the "well-pleaded allegations of the [C]omplaint as true and view

them in the light most favorable" to Plaintiff.  <u>Albers v. Bd. of Cnty. Comm'rs</u>, 771 F.3d 697,

700 (10th Cir. 2014).  Accordingly, the relevant, non-conclusory[1] facts are:

1.     Plaintiff is an Oklahoma limited liability company doing business in Oklahoma

       County, Oklahoma.  Plaintiff is registered to do business in the State of Oklahoma.

2.     Debtor, Aniquasea Marie Harding, resides in Yukon, Canadian County, Oklahoma.

**a. Debt to Plaintiff**

3.     On or about 2017, Defendant entered into a lease agreement with Radar Realty (the

       "Lease Agreement") to lease certain real property located at 2220 NW 113th Pl,

       Oklahoma City, OK 73120 (the "Property").

4.     Pursuant to the Lease Agreement, Radar Realty was the landlord and Defendant was

       the tenant.

5.     Pursuant to the terms of the Lease Agreement, Defendant agreed to pay certain rentals

       to Radar Realty[2] for the use and occupancy of the Property.

6.     Defendant defaulted on the Lease Agreement and moved out of the Property, leaving

       $6,850 in damages, rent arrears, lost rent and/or fees.

---

[1]The Court takes as true all well-pled, as opposed to conclusory, allegations of the Complaint. <u>Shero v. City of Grove, Okla.</u>, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 570).

[2] The Court presumes Plaintiff meant to refer to Radar Realty (the landlord under the Lease Agreement) rather than Plaintiff as no allegation is made the Lease Agreement was assigned to Plaintiff, and the Note (defined below) was not assigned to Plaintiff by Radar Realty until 2017.

7. On April 12, 2017, Defendant executed and delivered a written promissory note to Radar Realty (the "Note"). Pursuant to the terms of the Note, Defendant agreed to pay the principal sum of $6,850 for breach damages to the Property.

8. At the time of executing the Note, Defendant represented, expressly or impliedly, an intent and ability to repay the debt in accordance with its terms.

9. Defendant defaulted under the terms of the Note, making zero payments, despite having the ability or opportunity to do so.

10. On December 20, 2017, the Note was assigned to Plaintiff.

11. Despite the assignment and notice thereof, Defendant failed to make any payments.

12. On October 7, 2021, Plaintiff filed a lawsuit against Defendant for failure to pay the sums due pursuant to the Note in the District Court of Oklahoma County, State of Oklahoma (the "State Court"), styled as Ian's Enterprise, LLC v. Aniquasea Harding, Case No. CS-2021-6559 (the "State Court Case").

13. On January 14, 2022, Defendant was personally served the petition and summons (with exhibits) in the State Court Case by private process server at Defendant's then employer, Copart.

14. Despite being regularly and gainfully employed, Defendant failed to voluntarily pay on the Note, even after having had many years to pay.

15. On November, 1, 2022, Plaintiff obtained a judgment against Defendant in the State Court Case in the amount of $6,850 for the unpaid Note, plus $685 for attorney, $561.64 for costs and $3,582.22 for interest through July 6, 2022 (at 8% from April 11, 2017), less $432.22 for interest over the jurisdictional limit of that court, plus further prejudgment interest until the date judgment was rendered, along with

5

post-judgment interest, attorney fees (as allowed by state statute) and costs thereafter accruing (the "State Court Judgment").

16. Plaintiff enforced the State Court Judgment through garnishment proceedings and Defendant still failed to pay voluntarily.

**b. Prior Bankruptcy Case**

17. Prior to Plaintiff filing the State Court Case, Plaintiff filed two forcible entry and detainer actions against Defendant arising from a prior lease agreement in the cases styled as Ian's Enterprise, LLC v. Aniquasea Harding *et al.*, Case No. SC-2014-15363, and Ian's Enterprise, LLC v. Aniquasea Harding *et al.*, Case No. SC-2014-11595.

18. Similar to the facts in the State Court Case, Defendant defaulted on lease agreements, signed a promissory note on June 29, 2014, then filed bankruptcy.

19. Defendant filed a chapter 7 bankruptcy case. Case No. 15-14134, on October 28, 2015.

20. An adversary proceeding, styled "Oklahoma Employment Security Commission ("OESC") v. Defendant Harding, Adv. No. 16-01017, was filed on January 29, 2016 ("OESC AP").

21. Within the OESC AP case, the allegations were that:

   a. Defendant is an individual who filed one or more claims with OESC for unemployment insurance benefits payable to individuals who qualify for said benefits pursuant to the Act. Based on the claims filed, Defendant received benefits in the form of payment of money.

b. Defendant filed claims for benefits during the weeks ending February 1, 2014, through March 1, 2014, certifying for one or more such weeks Defendant was unemployed, available for work, and eligible to receive benefits.

c. A subsequent report by OESC disclosed that Defendant failed to disclose material facts which would have made Defendant ineligible to receive the money paid to and accepted by Defendant.

d. Defendant was employed by and received wages from Global Life Insurance Company, during the compensable weeks ending February 1, 2014, through March 1, 2014.

e. OESC sought to have this debt declared nondischargeable as a debt for money to the extent obtained by false pretense, false representation or actual fraud under Section 523(a)(2)(A).

22. On August 25, 2016, OESC was granted judgment against Defendant for $1,815 plus costs and interest, all of which was excepted from discharge due to the false representations Defendant had made to OESC regarding unemployment insurance benefits, pursuant to Section 523(a)(2)(A).

### c. Current Bankruptcy Case

23. Debtor filed the current chapter 7 voluntary petition on October 21, 2025 (the "Petition Date"). Case No. 25-13261-SAH (the "Bankruptcy Case"), Doc. 1.

24. Defendant scheduled the State Court Judgment debt owed to Plaintiff for discharge.

25. As of the Petition Date, the balance due and owing on the State Court Judgment obtained by Plaintiff against Defendant is: $11,441.61 plus costs and interest accruing thereafter at the contractual rate of 8% from October 21, 2025 until paid.

26. The lack of any payments on the Note, from inception through judgment evidences that Defendant had no intention to repay at the time of execution, rendering the representation fraudulent.

27. Defendant waited the minimum required period of eight (8) years before filing the current bankruptcy.

28. Public records from OSCN.net reveal approximately nineteen (19) cases filed against Defendant, with at least six (6) of those cases appearing to be forcible entry and detainer cases filed by landlords.

29. The totality of circumstances, including total nonrepayment without garnishment, repeated similar conduct, false representations against OESC to commit unemployment insurance fraud, prior successful adversary proceeding for nondischargeable sums, strategic bankruptcy timing, and extensive history of defaults and judgments, suggests Defendant's execution of the Note was done with fraudulent intent, lacking any genuine intent to repay.

30. Plaintiff relied on Defendant's representations in accepting the Note (or assignment).

31. Plaintiff has suffered damages in the amount of the unpaid State Court Judgment, plus accrued and accruing costs and interest.

## APPLICABLE STATUTORY PROVISIONS

Section 523 provides in pertinent part:

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

. . .

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

**DISCUSSION**

Defendant seeks dismissal of the Complaint for failure to state a claim under Section 523(a)(2)(A) with sufficient particularity.  Defendant further argues Plaintiff cannot assert a claim under Section 523(a)(2)(A) as it is an assignee of the Note and Defendant made no representations to Plaintiff.  Finally, Defendant asserts she is entitled to attorney's fees and costs under Section 523(d).  The Court disagrees on all counts, and for the reasons below, the Motion will be denied.

Section 523(a)(2)(A) excepts from an individual debtor's bankruptcy discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  Section 523(a)(2)(A).  Section 523(a)(2)(A) includes three grounds for nondischargeability – false representations, false pretenses, or actual fraud – all requiring proof of different elements.  Houston v. Munoz (In re Munoz), 536 B.R. 879, 884 (Bankr. D. Colo. 2015) (citing Bank of Cordell v. Sturgeon (In re Sturgeon), 496 B.R. 215, 222-23 (10th Cir. BAP 2013)).  Although the Complaint fails to state under which grounds Plaintiff is seeking an exception from discharge, it is clear the Complaint's

9

basis for nondischargeability is false representation.  The elements of a Section 523(a)(2)(A) claim for false representation are:  (i) debtor made a false representation; (ii) debtor made the representation with the intent to deceive the creditor; (iii) creditor relied on debtor's representation; (iv) creditor's reliance was justifiable; and (v) creditor was damaged as a proximate result.  Johnson v. Riebesell (In re Riebesell), 586 F.3d 782, 789 (10th Cir. 2009); Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996); Copper v. Lemke (In re Lemke), 423 B.R. 917, 921-22 (10th Cir. BAP 2010).

As Section 523(a)(2)(A) claims are based on fraud, Plaintiff must meet the Rule 9(b) heightened pleading standard and "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b) (made applicable by Fed. R. Bankr. P. 7009).  However, while Rule 9(b) requires Plaintiff to identify "the circumstances constituting fraud," Plaintiff need not allege fraudulent intent with particularity.  Prewitt, 486 B.R. at 523 (citing Schwartz, 124 F.3d at 1252).  "Simply stated, [the Complaint] must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  Prewitt, 486 B.R. at 523 (citing Schwartz, 124 F.3d at 1252).

Under this standard, the Complaint states a plausible claim under Section 523(a)(2)(A) by setting forth the who, what, when and where of the misrepresentations, while at the same time pleading intent generally, thereby satisfying the standards of Fed. R. Civ. P. 9(b).  The Complaint alleges on April 12, 2017, Defendant entered into the Note without any intention of performing, thereby misrepresenting her intent to pay the Note.  Plaintiff further alleges the totality of circumstances suggests fraudulent intent, including:  lack of voluntary repayment, prior false representation to the OESC, a history of lease defaults, and a prior bankruptcy case.  As intent

need not be alleged with particularity, the Complaint satisfies Fed. R. Civ. P. 9(b) and states a facially plausible claim.[3]  Prewitt, 486 B.R. at 523 (citing Schwartz, 124 F.3d at 1252).

Furthermore, it is not relevant Plaintiff is an assignee of the Note.  The majority of courts have held a nondischargeability claim is assignable.  Sierra Chemicals, LLC v. Mosley (In re Mosley), No. 7-11-15299 T, 2013 WL 1137061, at *3 (Bankr. D.N.M. Mar. 19, 2013) (first citing Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1091-93 (9th Cir.2009); then citing FDIC v. Meyer (In re Meyer), 120 F.3d 66, 70-71 (7th Cir. 1997); then citing First Am. Title Ins. Co. v. Pazdzierz (In re Pazdzierz), 459 B.R. 254, 261-62 (E.D. Mich. 2011); Turbo Aleae Inv., Inc. v. Borschow (In re Borschow), 467 B.R. 410, 418-20 (Bankr. W.D. Tex. 2012); Bertuca v. Flores (In re Flores), 2010 WL 3811920, at *3 (Bankr. S.D. Tex. 2010); FDIC v. Bombard (In re Bombard), 59 B.R. 952, 955 (Bankr. D. Mass. 1986)) ("If the original lender had a valid nondischargeability claim against a debtor, the Court sees no reason why the right to assert such a claim should be destroyed by assignment.").  In other words, Defendant did not need to make the alleged representation to Plaintiff, "so long as it is proved at trial that the misrepresentations were made to the original lender/assignor."  Sierra Chemicals, LLC v. Mosley (In re Mosley), No. 7-11-15299 TS, 2013 WL 1137061, at *3 (Bankr. D.N.M. Mar. 19, 2013).  Plaintiff may, therefore, assert a claim under Section 523(a)(2)(A) as the assignee of the Note.

Finally, Defendant's request for attorney's fees under Section 523(d) is premature.  To succeed on a Section 523(d) claim, Defendant must show Plaintiff filed a nondischargeability

---

[3] Plaintiff is advised it faces an uphill battle to prove Defendant's fraudulent intent *at the time of entering into the Note* based on her lack of repayment and prior bankruptcy case.  See, e.g., Myrum v. Michaels (In re Michaels), No. AP 24-02004, 2026 WL 1018575, at *5 (10th Cir. BAP, Apr. 15, 2026) (holding subsequent nonperformance does not establish false representation); Together Real Estate Holdings, LLC v. Roberts (In re Roberts), No. AP 22-1043 TBM, 2023 WL 2565721, at *19 (Bankr. D. Colo. Mar. 17, 2023) (holding fraudulent intent must be present at the time the contract was executed to be actionable under Section 523(a)(2)(A)).

action under Section 523(a)(2), the subject debt is a "consumer debt," and the debt was ultimately discharged.  Commercial Fed. Bank v. Pappan (In re Pappan), 334 B.R. 678, 682 (10th Cir. BAP 2005) (quoting Household Bank, N.A. v. Sales (In re Sales), 228 B.R. 748, 752 (10th Cir. BAP 1999)).  Once Defendant establishes these three facts, Plaintiff has the burden to show its position was either "substantially justified" or that "special circumstances" make the award unjust.  Pappan, 334 B.R. at 682; Farmway Credit Union v. Eilert (In re Eilert), 2014 WL 932127 (Bankr. D. Kan. Mar. 10, 2014).  Defendant's debt on the Note has not been discharged: therefore, Defendant cannot establish it is entitled to fees and costs under Section 523(d).

## CONCLUSION

For the reasons set forth above, the Motion is DENIED.  Defendant is granted twenty-one (21) days after entry of this Order to file an answer to the Complaint.

IT IS SO ORDERED.

# # #

12